TERRY v., BUEK.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. UNAUTHORIZED PAYMENT—RATIFICATION—ESTOPPEL.     .
    A vendor obtaining a judgment against the agent negotiating the sale, for the price paid to him, thereby ratifies such payment by the vendee, · and is estopped from maintaining an action against the vendee.
2. PLEADING—ANSWER—FACTS ALLEGED BY PLAINTIFF.
    A defendant need not plead a matter of estoppel, where the facts constituting the estoppel are alleged by plaintiff.

Appeal from trial term, New York county.

Action by Harvey Terry against Charles Buek for a balance due on the price of land and for a conversion of chattels. From an order setting aside a verdict on the first cause of action, defendant appeals. Reversed. .

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John M. Bowers, for appellant.
John S. Wise, for respondent.

McLAUGHLIN, J. The plaintiff employed one Abbey, a real-estate broker, to sell two houses for him, situated in the city of New York, and, after some negotiations, Abbey sold the same, including certain household furniture therein, to the defendant. Abbey represented to the plaintiff that all the defendant would pay for the houses, over and above the liens thereon, was the sum of $3,000; and he represented to the defendant that he was the real owner, and that the plaintiff held the title simply as ·security for the payment of $3,000, upon receiving which a deed of conveyance would be given. The consideration paid was $4,060.54 over and above the liens, $3,000 of which was paid to the plaintiff, and the balance ($1,060.54) to Abbey. Shortly after the transaction ·had been consummated by the delivery of the deed ·and the payment of the purchase money, the plaintiff learned of the fraud practiced upon him, and brought an action against Abbey to recover the money. paid to. him. He recovered a judgment for the full amount claimed, and, an execution upon the judgment having been issued and returned unsatisfied, this action was brought to recover the same sum from the defendant.

Two ·causes of action are attempted to be set up in the complaint: The first to recover the balance of. the purchase money of the real estate; $1,060.54; and the· second for the value of certain household

furniture in the houses when the transfer was made, alleged to have been converted by the defendant. In pleading the first cause of action, the plaintiff alleged that he employed Abbey to make the sale, and that he falsely represented that all the defendant would pay for the property, over and above the liens thereon, was the sum of $3,000; that he relied upon the representation thus made to him, accepted the $3,000, and gave the deed; that, learning of the fraud practiced upon him, he demanded the balance of the purchase money from Abbey, which he refused to pay; that he then brought an action against him, and recovered a judgment, but was unable to collect the same. Upon the trial, the foregoing facts were made to appear by the evidence introduced on the part of the plaintiff. At the close of the plaintiff's case, the defendant moved for a dismissal of the complaint as to the first cause of action, which was denied; and the same motion was renewed at the close of the trial, and again denied, and to both rulings the defendant duly excepted. The jury rendered a verdict in favor of the defendant as to the first cause of action, and in favor of the plaintiff as to the second cause of action. Thereupon the plaintiff moved to set aside the verdict, and for a new trial, as to the first cause of action, which motion was granted, and the defendant has appealed.

We think the order setting aside the verdict and granting a new trial must be reversed. The plaintiff was not entitled to recover on the first cause of action, either upon the facts stated in the complaint or upon the evidence introduced by him on the trial, and the motions to dismiss the complaint as to that should have been granted. The plaintiff was entitled, when he sold his property, to receive the full consideration paid for it; and, when he ascertained that he had not received that sum, he had two remedies, either one of which he could pursue. He could treat the payment to Abbey as unauthorized, and hold the defendant for the balance of the purchase money, or he could treat the payment as authorized, and bring an action against Abbey for money had and received for his use. But he was not entitled to both remedies. They were inconsistent, and the election to pursue one destroyed the other. If he elected to sue the defendant, he would, of necessity, be obliged to repudiate the payment to Abbey, because his right to recover from the defendant could only be based upon the theory that the balance of the purchase money had never been paid. If he sued Abbey, it could only be upon the theory that the balance of the purchase money had in fact been paid by the defendant to Abbey, and that he was entitled to recover that balance from Abbey upon the ground that it was money paid to him to and for the use of the plaintiff. He elected to sue Abbey, and by so doing destroyed the right, even if any had existed, which he had to proceed against the defendant. This is precisely what was held in the case of Fowler v. Bank, 113 N. Y. 453, 21 N. E. 172. There the defendant wrongfully paid to one Flynn certain money which should have been paid to the plaintiff, who, having ascertained this fact, brought an action against Flynn, and recovered a judgment, but was unable to collect it. He then brought an action against the bank, and ob-

tained judgment against it, which was reversed by the court of ap-
peals. What the court said in reversing the judgment in that case
is quite applicable to the facts in this one. Judge Earl said:

"After this demand of the deposit and the payment of the money to Flynn,
there were two remedies open to the plaintiff: He could sue the defendant as
a debtor for the deposit, and recover the amount thereof from it: or he could
bring an action for money had and received to and for his use against Flynn,
and recover it from him. But he was not entitled to both remedies at the
same time, or in succession, and by electing the one he would lose the other.
By electing to sue the bank, he would repudiate its payment to Flynn, and
his claim would be that the debt had not, in fact, been paid. By suing Flynn,
he would adopt and ratify the act of the bank in making payment to him,
and his claim would be that the money due to him had, in fact, been paid to
Flynn, and that Flynn had received it to and for his use. Such adoption and
ratification of the payment would legalize the payment as between him and
the bank, and thus discharge the bank. He could not occupy the position at
the same time of claiming that the bank had paid his money to Flynn, and
yet that the bank was still his debtor. His election in this case to sue Flynn,
and thus to treat him as his debtor, was not harmless to the bank, but in law
may be presumed to have injured the bank, unless it should now be held to be
discharged by its payment to Flynn. After the plaintiff commenced his ac-
tion against Flynn, and thus ratified and adopted the payment by the bank to
him, the bank could not, during the pendency of that action, have sued Flynn
to recover back the money on the ground that it had been paid by mistake
and received by him without authority, because it would have been a defense
to such an action that the real owner of the fund had adopted and ratified
the payment. But, even if the mere commencement and pendency of the ac-
tion by the plaintiff against Flynn would not have furnished such a defense,
it is beyond doubt that, if the bank should now bring an action against Flynn
to recover back the money, he could successfully defend, on the ground that
the plaintiff had ratified and adopted the payment, and thus discharged the
bank by the recovery of a judgment against him for the money paid as the
real owner thereof. The two remedies, one against Flynn and the other
against the bank, are not concurrent. If the two actions could not be prose-
cuted at the same time, they could not in succession. Nothing could be more
inconsistent than an action against Flynn, on the ground that the money due
to the plaintiff had been paid to him, and an action against the bank, on the
ground that it had not paid the deposit and still remained debtor therefor."

See, also, Riley v. Bank, 36 Hun, 517; Id., 103 N. Y. 669.

The plaintiff, by taking a judgment against Abbey, ratified the
act of the defendant in making the payment to him, and he was
thereafter estopped from claiming that the payment had never been
made or that the same was unauthorized.

But it is suggested, in the opinion of the learned trial justice,
that the defendant, not having pleaded the judgment obtained by
the plaintiff against Abbey as an estoppel, is not in a position to
take advantage of it. It was not necessary for the defendant to
plead it, because the plaintiff had done so. When the existence of
a fact is alleged in the complaint, it is unnecessary to plead the
same fact in the answer to enable a defendant to take advantage of
it. The defendant, as we have already seen, upon the allegations
of the complaint, as well as upon the facts established by the evi-
dence introduced on the trial, was entitled to a dismissal of the
complaint as to the first cause of action; and, the jury having
found a verdict for the defendant as to that cause of action, the
verdict should not have been disturbed.

The order setting aside the verdict and granting a new trial

must be reversed, with costs and disbursements to the appellant, and the motion for new trial and to set aside verdict denied, with costs. All concur.

<hr/>

## ATLANTIC CONST. CO. v. KREUSLER.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. FOREIGN CORPORATIONS—FAILURE TO OBTAIN CERTIFICATE—ENFORCEMENT OF CONTRACTS.

Act May 18, 1892, § 15 (Laws 1892, c. 687), prohibiting a foreign stock corporation, doing business in the state without having procured a certificate of compliance with the law authorizing it to do business, from maintaining an action on a contract made in the state, does not apply to actions on contracts made before the enactment of the section, in view of a prior provision of the section, providing that any such contract made prior to December 31, 1892, may be enforced thereafter.

2. SAME—AUTHORITY TO ISSUE STOCK—EVIDENCE—ADMISSIONS.

In an action by a corporation to recover a subscription on its capital stock, a recital in the subscription executed by defendant that the corporation had authority to issue stock is an admission of such authority which is sufficient to prove it, in the absence of other evidence to the contrary.

Appeal from trial term, New York county.

