*551 OPINION OF THE COURT
Joan B. Lefkowitz, J.
In this action for alleged legal malpractice defendants have moved for an order compelling the plaintiff to submit to a further medical examination and plaintiff cross-moves for an order precluding the physician from testifying at trial.
BACKGROUND
On August 25, 1982 plaintiff was a passenger in a van operated by coemployee William Brady and owned by his employer American Gas and Heat Company. The van was proceeding on Route 9W near the intersection of Old Route 304 in the Village of Haverstraw when it was involved in a head-on collision with a motor vehicle owned by Raylon Textiles and operated by a Mr. Torres. Plaintiff claimed serious injuries as a result of the accident. He retained the defendant law firm to prosecute his claim.
Defendants commenced two actions: (1) against New York State in the Court of Claims alleging, inter alia, poor design, maintenance and repairs of the road surface, particularly as it collected water that caused hydroplaning, and (2) in the Supreme Court, Rockland County, against the driver and owner of the other vehicle and Briar Contracting Corporation, who performed repaving work on the road surface prior to the accident.
In neither case did the defendants conduct a physical examination of the plaintiff. The Court of Claims action was tried first. During the liability phase of the bifurcated trial plaintiff’s attorney attempted to read in the other driver’s examination before trial, which examination had been taken in the Supreme Court action on notice to counsel there but not on notice to counsel for the State in the Court of Claims action. No prior attempt was made in the Court of Claims to conduct an examination before trial of Mr. Torres, the driver, as a nonparty. (Court of Claims Act § 17 [2].) The Trial Judge refused to permit the deposition taken in the Supreme Court action to be read. At the conclusion of the liability phase of the trial, plaintiff’s attorney convinced plaintiff that it would be in his best interests to discontinue the action and proceed with the Supreme Court case, apparently thinking that an adverse determination in the Court of Claims might affect the cause of action (on its merits or settlement value) against the contracting company. Presumably added to this equation, *552 though not set forth in the papers before the court, was a policy of liability insurance applicable to the offending vehicle that was insufficient to meet the monetary demands of the plaintiff. Thus, the Court of Claims action was discontinued with prejudice.
Thereafter the Supreme Court action came on for trial before Justice Bergerman. The prior trial attorney for plaintiff had unfortunately suffered a heart attack and was hospitalized. Consequently, with plaintiff’s consent, another partner in defendant’s law firm took over the case which was tried in May 1987.
During that trial the defendants offered $375,000 to $400,000 to settle the case and plaintiff’s trial attorney obtained a very significant reduction of the workers’ compensation lien. Plaintiff, however, decided not to accept the settlement. Indeed, it appears that unbeknownst to trial counsel, plaintiff visited the hospital where his prior trial attorney was convalescing and without revealing the amount of the settlement offer, obtained the sick bed attorney’s opinion of settlement value being $200,000 to $300,000 more.
The case went to the jury on liability and a verdict was rendered in favor of the plaintiff against the offending vehicle only, and the contracting company was exonerated. Thereafter, the action was settled for the sum of $200,000.
In May 1990 plaintiff commenced the instant action for $5,000,000. The amended answer contains certain affirmative defenses including culpable conduct of the plaintiff, failure to mitigate damages and Statute of Limitations as to the claims against the first trial attorney.
During pretrial activity herein defendants "requested” a physical examination of plaintiff. Plaintiff’s counsel objected but "to avoid unnecessary motion practice we agreed that Mr. Alva would appear for a physical examination, but that the issue of whether defendants could use the results of the physical examination would be held in abeyance until the time of trial”.
However, plaintiff failed to attend the first medical examination scheduled at Dr. Joel Mandel’s office, though the appointment was confirmed with plaintiff’s counsel the day before the scheduled examination. Dr. Mandel has billed defendants $350 for his time on that occasion. A second medical examination was arranged by counsel. Plaintiff was requested to produce all prior X-rays. However, while plaintiff *553 did attend the doctor’s office, he did not bring the X-rays, refused to be X-rayed and refused to undergo testing by means of pin pricking.
Defendants move for an order compelling an additional physical examination, requiring plaintiff to submit to X-rays and sensory testing and for the $350 cost of the cancelled examination. Plaintiff opposes the application and cross-moves for an order precluding Dr. Mandel from testifying at trial.
ISSUE
The motions raise an interesting question of first impression, to wit, in a legal malpractice case may the defendants attorneys offer proof in reduction of damages that may not have been available to the original tortfeasors by reason of their failure to conduct necessary pretrial discovery?
DISCUSSION
"An action for legal malpractice requires proof of three essential elements: (1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages”. (Mendoza v Schlossman, 87 AD2d 606, 606-607 [2d Dept 1982].) New York generally subscribes to the view that the value of the underlying (usually lost) claim is the measure of damage in a legal malpractice action. (Campagnola v Mulholland, 76 NY2d 38 [1990]; Vooth v McEachen, 181 NY 28 [1905]; 76 NY Jur 2d, Malpractice, § 67; Annotation, Measure and Elements of Damages Recoverable for Attorney’s Negligence in Preparing or Conducting Litigation — Twentieth Century Cases, 90 ALR4th 1033, 1045 [1992]; 1 Carmody-Wait 2d, NY Prac § 3:74; 2A Warren, Negligence, Attorney Malpractice, § 8.02; 7A CJS, Attorney and Client, §§ 255, 267, 273; 7 Am Jur 2d, Attorneys at Law, § 226; 16 Proof of Facts 2d, Legal Malpractice — Inadequate Case Investigation, §8, at 549 [1978]; 1 Mallen and Smith, Legal Malpractice ch 16 [3d ed 1988]; Meiselman, Attorney Malpractice: Law and Procedure §§4.1, 4.2 [1980 and 1992 Supp].) Recovery against the malpractice attorney is only allowed to the extent the underlying judgment would have been collectible. (Chiaffi v Wexler, Bergerman & Crucet, 116 AD2d 614 [2d Dept 1986]; cf., Pavia v State Farm Mut. Auto. Ins. Co., 186 AD2d 792 [2d Dept 1992].)
At bar, plaintiff claims he was fraudulently induced to discontinue the Court of Claims action and that defendants *554 were negligent in not securing the driver’s deposition for use in the action against the State. Assuming plaintiff prevails in establishing defendants’ negligence and causation, he must still prove the amount of his actual damages resulting therefrom. (Chiaffi v Wexler, Bergerman & Crucet, 116 AD2d 614, supra; see, Pacesetter Communications Corp. v Solin & Breindel, 150 AD2d 232 [1st Dept 1989], lv dismissed 74 NY2d 892 [1989].)
Where a plaintiff’s claim is time barred and he later retains counsel who is negligent in pursuing the claim, the negligent attorney may obtain dismissal of a malpractice action on the ground that the original defendant asserted the time bar as a defense, which precludes any recovery against the attorney because he was not the cause of plaintiff’s damage. (Nitis v Goldenthal, 128 AD2d 687 [2d Dept 1987].) In Nitis the record on appeal (2d Dept, No. 3867E, as maintained on microfiche by the Supreme Court Library in White Plains) reveals that the underlying claim involved a claim against an insurer under an insurance policy. The insurer contended that the plaintiff insured had failed to timely file proofs of loss and the claim was dismissed on that ground. However, in the malpractice action plaintiff claimed that the insurer had not presented a time-bar as an affirmative defense and it was therefore waived, which prevented the malpractice attorneys from asserting that defense. The attorneys contended that while the time-bar was not specifically raised as a defense in the underlying action the insurer did plead plaintiff’s contributory negligence as a defense and that was sufficient to inject the time-bar issue into the case properly. The Appellate Division, Second Department, agreed that the malpractice attorneys had established a valid affirmative defense in the underlying action and that plaintiff failed to prove that the insurer had "waived its defense” (Nitis v Goldenthal, 128 AD2d, at 688). Nitis, therefore, implicitly holds the converse that if a waiver occurred in the prior action such would be binding in the malpractice action.
Of course a client may still recover for damages caused by inept counsel even though the underlying claim is successfully resolved in his favor, i.e., for additional expenses incurred. (VDR Realty Corp. v Mintz, 167 AD2d 986 [4th Dept 1990]; Skinner v Stone, Raskin & Israel, 724 F2d 264 [2d Cir 1983]; 76 NY Jur 2d, Malpractice, § 39.) Here plaintiff sues essentially for the difference in the value of his claim as having been diminished by defendants’ negligence; that is, the value *555 of the claim had it been properly prepared and tried in the Court of Claims less any payments received in the Supreme Court action. (1 Hallen and Smith, op. cit., § 16.19.)
Had any of the exonerated defendants in the underlying action pleaded an affirmative defense that the present defendants could use to defeat or reduce damages in the legal malpractice action, the burden of proof would be upon the alleged malpractice defendants to establish the vitality of such a defense. (Romanian Am. Interests v Scher, 94 AD2d 549 [2d Dept 1983]; 7A CJS, Attorney and Client, § 268; Heiselman, op. cit, ch 7.)
The gravamen of any legal malpractice claim is that "but for” the negligence of the attorney, the underlying cause of action would have been sustained. (Campagnola v Mulholland, 76 NY2d 38, supra; 7 Am Jur 2d, Attorneys at Law, § 223; PJI 2:152; Houthwaite, Jury Instructions on Damages In Tort Actions § 16-5 [1988]; Annotation, Attorney’s Liability for Negligence in Preparing or Conducting Litigation, 45 ALR2d 5; Note, The Standard of Proof of Causation In Legal Malpractice Cases, 63 Cornell L Rev 666 [1978]; 14 Am Jur Trials, Professional Negligence — Attorneys, at 265 et seq. [1968].) Consequently, as the cases and treatises discuss the alliteration of a "case-within-a case” or "trial-within-a trial” (2 Mallen and Smith, op. cit., §27.21, at 688) or "lawsuit-within-a lawsuit” (Katsaris v Scelsi, 115 Misc 2d 115, 116 [Sup Ct, Broome County 1982]) is to be tried in the malpractice action.
None of the aforementioned decisions, however, offers a bright-line principle applicable to the question posed herein. To illustrate, if the underlying action was barred by the Statute of Limitations but said defense was waived because it did not form the basis of a preanswer motion to dismiss or was not asserted in the answer (CPLR 3211 [e]; Gauthier v Village of Larchmont, 30 AD2d 303 [2d Dept 1968]), could the malpractice defendants assert such defense to defeat the claim? The answer implied in Nitis v Goldenthal (128 AD2d 687, 688, supra) is no. But are malpractice attorneys barred from producing proof that would otherwise be admissible regarding the value of the underlying claim?
At bar, while the pleadings in the underlying actions have not been submitted to the court, it is probably safe to assume that the defendants in their answers generally denied the allegations, which would have put plaintiff to his proof to establish the nature and extent of his injuries. (Schwarz v *556 Oppold, 74 NY 307 [1878]; Hoffstaedter v Carlton Auto Supplies Co., 203 App Div 494, 496 [1st Dept 1922]; 5 CarmodyWait 2d, NY Prac §§ 30:15-30:18, 30:40; 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3018.04, at 30-386; Pomeroy, Code Remedies §§ 501-561; Civ Prac Act § 261 [1]; CPLR 3018 [a]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3018, at 150-151.) "Under a general denial the defendant may controvert by evidence anything which the plaintiff is bound to prove in the first instance to make out his cause of action, or anything that he is permitted to prove for that purpose under his complaint.” (Milbank v Jones, 141 NY 340, 345 [1894]; Whitney v Whitney, 171 NY 176, 181 [1902].)
The defendants in the underlying actions could have challenged the extent of plaintiff’s injuries by proof other than from one of their doctors by way of cross-examination of plaintiff, his physicians and use of other types of experts (e.g., an accident reconstruction expert to show that the injuries could not have occurred as a result of the accident). Why should the malpractice defendants be prevented from developing the evidence necessary to show what the true value of plaintiff’s injuries are? To phrase the question in that manner seems to provide the answer for these defendants are liable, if at all, only for the consequential damages caused by their neglect and not for the neglect of others.
Pursuant to plaintiff’s view of the nature of a legal malpractice trial, defendants would be limited to the very proof in defense of the underlying action that the original defendants could have asserted but no more. However, while legal malpractice cases involve a trial within a trial, the court has not found any case law interpretation that limits the proof malpractice defendants may offer in mitigation of plaintiff’s damages. (Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy, & Levine, 45 NY2d 730 [1978], affg on concurring opn below 59 AD2d 551 [2d Dept 1977]; Titsworth v Mondo, 95 Misc 2d 233 [Sup Ct, Monroe County 1978] [use of expert testimony on question of attorney negligence suggested], mod 73 AD2d 1049 [4th Dept 1980] [the modification reversed the trial court’s order preventing the malpractice attorneys from proving that plaintiff’s successor counsel in the underlying action committed malpractice and the damages caused plaintiff resulted from that act, not theirs]; cf., Hunt v Kolken, 49 AD2d 747 [2d Dept 1975], affd on opn below 40 NY2d 949 [1976].) In the court’s opinion the interests of justice and search for truth *557 warrant the physical examination sought without barring the physician’s testimony at trial.
Accordingly, as plaintiffs medical condition is in controversy the court grants defendants’ motion for a further medical examination and directs plaintiff to submit to X-rays and noninvasive sensory testing. (Thomas v Mather Mem. Hosp., 162 AD2d 521 [2d Dept 1990]; Lapera v Shafron, 159 AD2d 614 [2d Dept 1990]; Healy v Deepdale Gen. Hosp., 145 AD2d 413 [2d Dept 1988]; Captain v Kobak, 95 AD2d 766 [2d Dept 1983].) The examination shall be held at Dr. Mandel’s office at a time and date to be agreed upon but no later than 60 days from this date. Plaintiff shall reimburse defendants the $350 cost of the cancelled examination within 20 days after service of a copy of the order hereon with notice of entry. Cross motion to preclude Dr. Mandel from testifying at trial is denied.